EASON *v.* MORRISON *et al.*

No. 10913.   OCTOBER 17, 1935.

*Sam G. Dettelbach,* for plaintiff.

*M. J. Yeomans, attorney-general, B. D. Murphy* and *Dave M. Parker, assistant attorneys-general,* for defendants.

GILBERT, Justice.   A. M. Eason, on May 6, 1935, filed a petition for mandamus absolute against C. A. Morrison and others, constituting the State Board of Barber Examiners, to require them to issue to him a renewal license for the practice of his occupation as a barber.   He alleged that he had been practicing as a properly licensed barber, and had requested in writing a renewal of his license, and had tendered to the board the renewal fee as required by the act of 1931 (Ga. Laws 1931, p. 157), but that he was arbitrarily refused a renewal license because he had not also submitted a laboratory report to satisfy the board that he was free from infectious and contagious diseases; that section 6 of the act of 1914 (Ga. Laws 1914, p. 75) as amended by the act of 1931, for the regulation of the practice of the occupation of a barber, provided, among

other things, that "said board shall have the power to adopt all reasonable rules and regulations for the enforcement of and carrying out the purposes of this act," and that in pursuance thereof the board had adopted certain rules and regulations, among which was one that an applicant for a renewal license shall submit to the board a laboratory report and doctor's certificate to satisfy the board that he is free from infectious diseases; that he has substantially complied with all of the regulations except that just quoted, and he alleges that it is in direct conflict with section 9 of the act of 1914, "which in effect states that barbers having previously qualified under the terms of section nine (9) are not required to requalify under said section (section 9) as amended," and he alleges that the regulation is unauthorized under the law. The defendants filed an answer admitting substantially all of the allegations of fact in the petition, but denying that their rule requiring a laboratory report and doctor's certificate was in conflict with section 9 of the act of 1914. They denied that the law did not authorize a rule or regulation requiring the annual production of a laboratory report and doctor's certificate with an application for a renewal license, and that the board had acted arbitrarily in refusing to issue the renewal license, and that it was their duty to issue the same. The court denied a mandamus absolute. The petitioner excepted.

The question here presented is whether or not the regulation of the board of barber examiners requiring a laboratory report and a doctor's certificate before issuing a renewal license to a barber previously licensed is authorized under the law and is a reasonable regulation. The first statute regulating the practice of the occupation of a barber was enacted in 1914 (Ga. L. 1914, p. 75), applying only to barbers in cities and towns with more than 5000 population, but was amended in 1931 (Ga. L. 1931, p. 157) by striking out the limitation as to the population of the city or town and by making certain changes as to procedure and fees not necessary to be here stated. The present law is codified in Chapter 84-4 of the Code of 1933, § 84-407, which provides that "Said board shall have power to adopt reasonable rules and regulations not inconsistent with the constitution or laws of the United States or of this State or with the terms of this chapter, for the enforcement of and carrying out the purposes of this chapter." This is a codification

of the second sentence in section 6 of the act of 1914. Was the board authorized under this section of the Code to promulgate and enforce the rule requiring a laboratory report and doctor's certificate before issuing a renewal license to a barber previously licensed? The section of the act codified is very comprehensive, and seems clearly to furnish authority for the rule. If, however, there is doubt, we may examine the title of the act in aid of statutory construction. *Comer* v. *State,* 103 *Ga.* 69 (29 S. E. 501); *Smith* v. *Evans,* 125 *Ga.* 109 (53 S. E. 589); *Standard Steel Works* v. *Williams,* 155 *Ga.* 177, 182 (116 S. E. 636); *Colquitt County* v. *Bahnsen,* 162 *Ga.* 340, 348 (133 S. E. 871); Curoe *v.* Spokane &c. R. Co., 32 Idaho, 643 (186 Pac. 1101, 37 A. L. R. 923). This may be done even though the act has been codified without the title. *Comer* v. *State,* and *Smith* v. *Evans,* supra. The caption of the act of 1914 is as follows: "An act to regulate the practice of the occupation of a barber in certain cities within the State of Georgia, and to provide for the registering and licensing of persons to carry on such practice, *and to insure the proper sanitary conditions in barber shops, and prevent the spreading of disease* in the State of Georgia; to establish a State Board of Barber Examiners to carry out the purposes of this act; to make any penal violations of the terms of this act, and to prescribe punishment therefor; and for other purposes." (Italics ours.) From that caption, taken in connection with the language from section 6 of the act of 1914 which is codified in § 84-407 of the Code of 1933, "Said board shall have the power to adopt reasonable rules and regulations," etc., it is clear that the General Assembly intended to authorize the board to make any reasonable regulation "to insure the proper sanitary conditions in barber-shops and prevent the spreading of diseases in the State of Georgia." The act, as amended, being for the protection of the public health, must be liberally construed to that end. "It is the duty of judges (says Lord Bacon, speaking of remedial statutes) to put such a construction upon a statute as may redress the mischief, guard against all subtle inventions and evasions for the continuance of the mischief, pro privato commodo, and give life and strength to the remedy, pro bono publico, according to the true intent of the makers of the law." *Price* v. *Bradford,* 5 *Ga.* 364, 369. See also *Taliaferro* v. *Moffitt,* 54 *Ga.* 150; *Murray* v. *Williams,* 121 *Ga.* 63 (48 S. E. 686); *Lewis* v. *Brannen,* 6 *Ga. App.* 419, 422 (65

S. E. 189); Code of 1933, § 102-102. The law as amended by the act of 1931 expressly requires every applicant, when first applying for a license, to satisfy the board that he is free from infectious or contagious diseases; and in the Code of 1933, § 84-412, it is provided: "If the holder of any certificate of registration issued under this Chapter shall attempt to follow the occupation of barbering while suffering with any infectious or contagious disease, said certificate of registration shall be revoked by the Board." This is a codification of similar language in section 10 of the act of 1931, which section amends section 12 of the act of 1914. There is no provision in the act of 1914 or the act of 1931 or in the Code which in express terms requires a properly licensed barber to satisfy the board, when he annually applies for a renewal of his license, that he is free from infectious or contagious diseases. But as he is required to prove himself free from such diseases when first licensed, and is subject to have his license revoked if he pursues his occupation while so diseased, it is evident that the General Assembly's purpose, as declared in the caption of the act of 1914, was to prevent the spread of disease in the State of Georgia; and after expressly providing in the act as amended that an applicant be free from disease when a license is issued him in the first instance, and proscribing against his pursuing his occupation if so diseased, and delegating to the board the power to make all reasonable rules and regulations to effect the purposes of the law, it follows that the regulation sub judice was authorized, provided that it was a reasonable regulation. Was it a reasonable regulation? It is common knowledge that a barber-shop is a frequent source for the spread of infectious and contagious diseases; and this fact has been judicially recognized in *Cooper* v. *Rollins,* 152 *Ga.* 588, 594 (110 S. E. 726), and in *State Board of Barber Examiners* v. *Blocker,* 176 *Ga.* 125 (167 S. E. 298). Not only may the tools or devices with which a barber plies his trade become unsanitary and apt to communicate disease to one patron by reason of having been contaminated with a diseased patron, but the barber himself may, by the necessarily close association with his customer, contract a disease and innocently communicate it to his patron. He is not supposed to determine if his customer be hygienic, but must accept him at his peril and perhaps that of the public. The regulation is, therefore, salutary and a protection to the public and barber alike, and, under

the authority granted and the obvious legislative intent, must be regarded as reasonable, not only with respect to the requirement of a laboratory report and doctor's certificate, but as to the frequency with which they must be obtained and furnished to the board by an applicant for a renewal license.

■ It is urged that the regulation in question is, and was at the time of the application for a renewal license, in conflict with section 9 of the act of 1914 as amended by section 6 of the act of 1931. Section 9 was designed to permit barbers in towns or cities of over 5000 population, who had practiced their occupation for at least three years, to obtain a license without standing an examination as to their ability as a barber by applying within ninety days, subject to certain terms of the act and amendments thereto. That section was amended by section 6 of the act of 1931 so as to apply to barbers in all towns or cities, and to permit all barbers in towns or cities of over 5000 population, who had not qualified as barbers under the act of 1914 and who had been practicing for at least three years, and those coming within the amendment and who had practiced for at least three years, to be registered without having to be examined as to their ability as barbers, provided that they apply within ninety days from the date of the signing of the amending act, but otherwise subject to the terms of the section, and requiring that they satisfy the board as to their freedom from infectious or contagious diseases. In amending section 9 of the act of 1914 it was provided in section 6 of the act of 1931 that "Barbers having previously qualified under the terms of section 9 are not required to requalify under said section as hereby amended." Under section 9 of the act of 1914 an applicant might obtain a license by filing an affidavit showing that he had practiced the occupation of a barber for at least three years prior to the date of the approval of the act and by paying the required fee. There is, however, nothing in the act of 1914 or in the amending act of 1931 to indicate that the General Assembly intended to declare, or did declare, that the skill of a barber has any relation to the question of his freedom from disease. It does not follow that because a barber has practiced his occupation for three years he is not, or may not become, a medium for the spread of infectious or contagious diseases. Properly construed, the exemption from requalifying under section 9 as amended relates to requalifying as to skill as a barber and not to

any question of freedom from disease. The regulation of the board is not in conflict with section 9 of the act of 1914 as amended by section 6 of the act of 1931.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*